UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

———————————————————————————

TEAGEN B.,

                         Plaintiff,

          v.

COMMISSIONER OF SOCIAL
SECURITY,

                         Defendant

———————————————————————————

**DECISION AND ORDER**

1:22-CV-00772 CDH

## INTRODUCTION

Plaintiff Teagen B. ("Plaintiff") seeks review of the final decision of the Commissioner of Social Security ("the Commissioner" or "Defendant") denying her applications for disability insurance benefits ("DIB") and supplemental security income ("SSI"), pursuant to Titles II and XVI of the Social Security Act (the "Act") (Dkt. 1). Under Rules 5 through 8 of the Supplemental Rules for Social Security Actions Under 42 U.S.C. § 405(g) and Local Rule of Civil Procedure 5.5(d), the matter has been presented for decision by the parties' filing of motions for judgment on the pleadings. (*See* Dkt. 9; Dkt. 15; Dkt. 16). For the reasons that follow, the Court grants Plaintiff's motion to the extent that the matter is remanded for further administrative proceedings and denies the Commissioner's motion.

## BACKGROUND

On February 24, 2020, Plaintiff protectively filed an application for SSI. (Dkt.

6 at 21, 93).[1] On March 2, 2020, Plaintiff protectively filed an application for DIB. (*Id.* at 21, 80). Both applications alleged disability beginning July 1, 2019. (*Id.* at 21). Plaintiff's applications were initially denied on August 14, 2020, and upon reconsideration on October 13, 2020. (*Id.* at 21, 122-41, 144-67). Plaintiff requested a hearing before an administrative law judge ("ALJ"), which was held on June 29, 2021. (*Id.* at 21, 40-72). On July 28, 2021, the ALJ issued an unfavorable decision. (*Id.* at 21-34). Plaintiff sought review from the Appeals Council, which denied her request on August 15, 2022. (*Id.* at 6-9). This action followed. (Dkt. 1).

**LEGAL STANDARD**

## I.    Administrative Determination of Disability

The Social Security Administration's ("SSA") regulations establish a five-step, sequential evaluation that an ALJ follows in determining whether a claimant is disabled within the meaning of the Act. *See Sczepanski v. Saul*, 946 F.3d 152, 156 (2d Cir. 2020); 20 C.F.R. §§ 404.1520(a), 416.920(a). At step one, the ALJ determines whether the claimant is currently engaged in substantial gainful work activity. 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If the claimant is not, the ALJ continues to step two and determines whether the claimant has an impairment, or combination of impairments, that is "severe" within the meaning of the Act. *Id.* §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). An impairment is "severe" within the meaning of the Act if it significantly limits the claimant's physical or mental ability to do basic

---

[1]    In referencing the administrative transcript, the Court has referred to the page numbers generated by CM/ECF and found in the upper right corner of the documents.

work activities. *Id*. §§ 404.1520(c), 416.920(c).

If the claimant has at least one severe impairment, the ALJ proceeds to step three. There, the ALJ determines whether the claimant's impairment or impairments meet or medically equal the criteria of the impairments listed in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings"). *Id*. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the claimant does not have an impairment that both meets or medically equals a Listing and satisfies the Act's durational requirement, *see id*. §§ 404.1509, 416.909, the ALJ must determine the claimant's residual functional capacity ("RFC"), *id*. §§ 404.1520(e), 416.920(e). "The Social Security regulations define residual functional capacity as the most the claimant can still do in a work setting despite the limitations imposed by his impairments." *Selian v. Astrue*, 708 F.3d 409, 418 (2d Cir. 2013); *see* 20 C.F.R. §§ 404.1545, 416.945.

At step four, the ALJ determines whether, in light of the RFC assessment, the claimant is capable of performing any past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If the claimant is unable to perform any past relevant work, the ALJ proceeds to the fifth and last step. At this step, the burden shifts to the Commissioner to demonstrate that, taking into account the claimant's age, education, work experience, and RFC, the claimant is capable of performing substantial gainful work that exists in the national economy. *Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999); *see* 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).

## II.    <u>Review by the Court</u>

The Court has jurisdiction under 42 U.S.C. § 405(g) to review the

Commissioner's final decision denying an application for DIB or SSI. It is not the Court's function to "determine *de novo* whether [the claimant] is disabled." *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998) (quotation omitted). Instead, in performing its review, the Court is "limited to determining whether the [Commissioner's] conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Selian*, 708 F.3d at 417 (citation omitted). If the Commissioner's findings of fact are supported by substantial evidence, they are "conclusive." 42 U.S.C. § 405(g). In other words, "[i]f there is substantial evidence to support the determination, it must be upheld." *Selian*, 708 F.3d at 417.

"Substantial evidence means more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (quotation omitted). However, "[t]he deferential standard of review for substantial evidence does not apply to the Commissioner's conclusions of law." *Byam v. Barnhart*, 336 F.3d 172, 179 (2d Cir. 2003).

## DISCUSSION

### I.      The ALJ's Decision

The ALJ applied the five-step, sequential evaluation described above in determining whether Plaintiff was disabled. Before proceeding to step one, the ALJ found that Plaintiff met the insured status requirements of the Act through March 31, 2020. (Dkt. 6 at 23).

The ALJ found at step one that Plaintiff had not engaged in substantial gainful

activity since July 1, 2019, the alleged onset date. (*Id.*). The ALJ found at step two that Plaintiff had the following severe impairments: "bipolar disorder, generalized anxiety disorder, panic disorder, and cannabis use disorder[.]" (*Id.*). The ALJ further concluded that Plaintiff had the non-severe impairments of asthma and obesity. (*Id.* at 24).

The ALJ found at step three that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of any of the Listings. (*Id.*). At step three, the ALJ specifically discussed the criteria of Listings 3.02, 3.03, 12.04, and 12.06. (*Id.* at 24-26). The ALJ also considered the effects of Plaintiff's obesity in accordance with Social Security Ruling 19-2p. (*Id.* at 24).

The ALJ assessed Plaintiff's RFC and determined that Plaintiff retained the ability to perform a full range of work at all exertional levels, with the additional limitations that Plaintiff could:

> understand, remember, and carry out simple instructions and tasks; can maintain attention and concentration in two hour increments; no supervisory duties; no independent decision-making or goal setting; no strict production quotas as with assembly line work; minimal changes in work routine and processes; occasional interaction with supervisors, coworkers, and the public; and no team, tandem, or codependent work.

(*Id.* at 26). The ALJ then proceeded to step four and found that Plaintiff was unable to perform any past relevant work. (*Id.* at 32).

The ALJ found at step five that—considering Plaintiff's age, education, work experience, and RFC—there were jobs that exist in significant numbers in the national economy that Plaintiff could perform. (*Id.* at 32-33). The ALJ ultimately concluded that Plaintiff was not disabled, as defined in the Act, from July 1, 2019,

through the date of the ALJ's decision. (*Id.* at 22, 34).

## II.    Remand for Further Administrative Proceedings is Required

Plaintiff argues that the ALJ: (1) "failed to fully develop the record with weekly individual therapy treatment notes" from Horizon Health Services ("Horizon"); (2) "failed to properly apply the regulatory factors" and failed to state how persuasive he found the opinions of Plaintiff's treating sources; (3) failed to incorporate various limitations discussed in Drs. Dennis Noia, H. Tzetzo, and A. Chapman's opinions into the RFC despite finding the opinions persuasive, and (4) failed to properly justify the limitations he included in his RFC. (Dkt. 9-1 at 1, 10-18). For the reasons set forth below, the Court agrees that the ALJ failed to comply with the Commissioner's regulations when assessing the opinions of Nurse Practitioner ("NP") Daijha Fulgham and that this error necessitates remand. The Court accordingly need not and does not reach Plaintiff's remaining arguments.

### A.    Standard for Assessment of Medical Opinions

In adjudicating a disability application, an ALJ must consider and weigh the evidence of record, including medical opinions. *See Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013); *see also* 20 C.F.R. §§ 404.1520c(b), 416.920c(b) ("We will articulate in our determination or decision how persuasive we find all of the medical opinions and all of the prior administrative medical findings in your case record."). The Commissioner's regulations set forth the following factors that the ALJ considers when assessing the persuasiveness of a medical opinion: (1) supportability, meaning that, "[t]he more relevant the objective medical evidence and supporting explanations

presented by a medical source are to support his or her medical opinion(s) . . ., the more persuasive the medical opinions . . . will be"; (2) consistency, meaning that, "[t]he more consistent a medical opinion(s) . . . is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) . . . will be"; (3) relationship with the claimant, including the length of the treatment relationship, frequency of examinations, purpose of the treatment relationship, extent of the treatment relationship, and whether the relationship included a physical examination; (4) specialization, meaning that the opinion of a specialist "may be more persuasive about medical issues related to his or her area of specialty" than the opinion of a non-specialist; and (5) "other factors that tend to support or contradict a medical opinion," which includes but is not limited to "evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of [the SSA] disability program's policies and evidentiary requirements." 20 C.F.R. §§ 404.1520c(c), 416.920c(c).

Supportability and consistency are the most important factors and must be discussed in the ALJ's decision. 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2). The ALJ may, but is not required to, explain how he or she considered the other factors. *Id.*

### B.    The ALJ's Failure to Comply with the Regulations

Nurse Practitioner ("NP") Daijha Fulgham completed a Medical Examination for Employability Assessment on October 29, 2019. (Dkt. 6 at 615-17). She opined therein that Plaintiff was "moderately limited" in her ability to understand, remember, and carry out instructions, make simple decisions, and maintain socially

appropriate behavior. (*Id.* at 616). NP Fulgham further opined that Plaintiff was very limited in her ability to maintain attention and concentration, interact appropriately with others, and function in a work setting at a consistent pace. (*Id.*). NP Fulgham noted that Plaintiff "could benefit from doing . . . independent work activities when [her] medications [were] stable" and she developed more coping skills. (*Id.*). The ALJ found that portions of this opinion were "poorly supported," explaining that "[t]reatment records repeatedly outline mostly normal findings with occasional disturbances in fidgeting but retained cognitive functioning" and that "[e]ven during an acute exacerbation of suicidal ideation requiring emergency intervention, psychiatric findings did not establish limits as significant as those noted by" NP Fulgham. (*Id.* at 29). The ALJ further stated that this opinion was inconsistent with both "Disability Determinations Services administrative findings" and other opinions issued by NP Fulgham. (*Id.*). However, he did not state how persuasive he found the functional portions of the opinion, stating only that NP Fulgham's "notation [Plaintiff] is unable to engage in work activities is not considered persuasive or helpful." (*Id.*).

On March 25, 2020, NP Fulgham completed another Medical Examination for Employability Assessment. (*Id.* at 609-11). NP Fulgham opined that Plaintiff was "moderately limited" in her ability to understand, remember, and carry out instructions, maintain attention and concentration, make simple decisions, interact appropriately with others, and maintain socially appropriate behavior and "very limited" in her ability to function in a work setting at a consistent pace. (*Id.* at 610).

The ALJ found NP Fulgham's "reference to improvement with stability with medications [wa]s consistent with provided care records and thus somewhat persuasive," but did not state how persuasive he found the functional portions of this opinion. (*Id.* at 29). He further stated that NP Fulgham had opined that the identified limitations were expected to last 4-6 months and that this "failed to support limits consistent with the Agency's duration requirement." (*Id.*).

NP Fulgham and mental health counselor ("MHC") Chelsea St. Laurent completed a Medical Source Statement Regarding Mental Health on May 5, 2021. (*Id.* at 874-79). In this statement, NP Fulgham and MHC St. Laurent opined that Plaintiff had a "limited but satisfactory" ability to remember work-like procedures, understand and remember simple instructions, and get along with co-workers without unduly distracting them or exhibiting extreme behavior. (*Id.* at 876). They further opined that Plaintiff was "unable to meet competitive standards" in her ability to maintain regular attendance, be punctual within customary tolerances, sustain an ordinary routine without special supervision, work in coordination with or proximity to others without being unduly distracted, ask simple questions and request assistance, accept instructions and respond appropriately to criticism from supervisors, and deal with normal work stress. (*Id.*). In all the other identified mental abilities and aptitudes needed to do unskilled work, NP Fulgham and MHC St. Laurent opined that Plaintiff was "seriously limited." (*Id.* at 876). NP Fulgham and MHC St. Laurent also opined that Plaintiff "needs things explained slow[ly] and . . . a lot of help understanding directions" and that Plaintiff's condition would cause her

to call off work more than four days per month. (*Id.* at 876-78). As to this opinion, the ALJ stated that Plaintiff's "treatment records and mental status findings did not support the conclusions or a significant increase[] in provided care throughout the years[.]" (*Id.* at 30). He also stated that NP Fulgham "provided three forms identifying limits for [Plaintiff] which were inconsistent with one another." (*Id.*).

The Court agrees with Plaintiff that the ALJ failed to comply with the regulations in assessing these opinions. First, he failed to clearly articulate how persuasive he found any of these opinions. "An ALJ must articulate how he considered the medical opinions and how persuasive he finds all of the medical opinions." *Kimberly A. D. v. Comm'r of Soc. Sec.*, No. 6:22-CV-01103 (CFH), 2024 WL 1142012, at *4 (N.D.N.Y. Mar. 15, 2024) (quotations and alterations omitted). Defendant argues that the ALJ "implicitly found these opinions were not persuasive" (Dkt. 15-1 at 15), essentially contending that the failure to comply with the regulations in this regard was harmless.

It is true that "[s]uch an error may be deemed harmless if a searching review of the record assures [the Court] that the substance of the regulation was not traversed." *Ramirez v. Comm'r of Soc. Sec.*, No. 23-CV-5806 (VSB) (BCM), 2024 WL 3046605, at *15 (S.D.N.Y. May 31, 2024), *adopted*, 2024 WL 3046420 (S.D.N.Y. June 18, 2024). But that is not the case here. The ALJ's decision in this matter is permeated with contradictions and omissions that make it impossible for the Court to conclude that he was complying with the Commissioner's regulations. For example, at step three of the analysis, the ALJ simultaneously concluded that Plaintiff had a

- 10 -

"moderate limitation" in interacting with others and that she had "failed to establish limitations in this domain[.]" (Dkt. 6 at 25). The ALJ then concluded that Plaintiff had "moderate limitation" in adapting or managing oneself, but also that she "failed to establish no greater than moderate limitations in this domain." (*Id.* at 26). While these errors do not directly bear on the ALJ's assessment of NP Fulgham's opinion, they are illustrative of the confused nature of the ALJ's decision.

The ALJ's inconsistencies and omissions continued into his assessment of NP Fulgham and MHC St. Laurent's opinions. The ALJ referred to NP Fulgham as a "doctor." (*Id.* at 29). The ALJ failed to acknowledge that the May 2021 opinion was not authored by NP Fulgham alone, but was co-authored by MHC St. Laurent. The ALJ gave explanations for his assessments that are cursory, making them insusceptible to meaningful review by the Court. For example, in assessing the October 2019 opinion, the ALJ cited to 21 pages of hospital records as the basis for his conclusion that "[e]ven during an acute exacerbation of suicidal ideation requiring emergency intervention, psychiatric findings did not establish limits as significant as those noted by [NP Fulgham]." (*Id.*). The ALJ provided no explanation as to what in the hospital records led him to that conclusion, and the Court's own review thereof sheds no light on the matter.

And, most significantly, the ALJ failed to explain what, if any, role NP Fulgham's and MHC St. Laurent's opinions played in his RFC finding. In particular, the ALJ's RFC finding is partially consistent with the limitations identified in NP Fulgham's October 2019 opinion, yet the Court is left to guess whether the ALJ found

those portions of the opinion persuasive. In light of these errors and omissions, the Court is not assured that the ALJ complied with the substance of the Commissioner's regulations. Remand is accordingly required. Having reached that conclusion, the Court need not and does not consider the other arguments made by Plaintiff in support of her request for remand.

## CONCLUSION

For the foregoing reasons, the Commissioner's motion for judgment on the pleadings (Dkt. 15) is denied, and Plaintiff's motion for judgment on the pleadings (Dkt. 9) is granted to the extent that the matter is remanded for further administrative proceedings. The Clerk of Court is directed to enter judgment and close this case.

SO ORDERED.

_____
COLLEEN D. HOLLAND
United States Magistrate Judge

Dated:   Rochester, New York
         March 30, 2026